UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>RICHARD HATCH JR. | CAUSE NO.: 1:20-CR-30-HAB |

**OPINION AND ORDER**

**I.  Introduction**

Defendant, Richard Hatch Jr. ("Hatch"), plead guilty pursuant to a plea agreement to being a felon in possession of a firearm in violation of 18 U.S.C. §922(g)(1). (ECF Nos. 15, 22). On February 10, 2021, the Court sentenced Defendant to 37 months' imprisonment followed by 2 years of supervised release. This high-end sentence was grounded in the Defendant's total offense level of 12 and his criminal history category of VI, that together yielded a guideline range of 30-37 months' imprisonment (Presentence Investigation Report, ECF No. 29 ("PSR")). Defendant's criminal history category was based on a total of 11 criminal history points. As part of this calculation, Defendant received two additional points to his criminal history score, because he committed the offenses while under a criminal justice sentence.

Since Hatch was sentenced, the United States Sentencing Commission passed Amendment 821. Part A of the amendment addresses status points, decreasing them by one point for individuals with seven or more criminal history points and eliminating status points for those with six or fewer criminal history points. Subpart 1 of Part B creates a new § 4C1.1 guideline that provides a decrease of two offense levels for "Zero-Point Offenders" (those with no criminal history points) whose offense did not involve specified aggravating factors. Parts A and B, subpart 1 of the criminal history amendment both have retroactive effect. Because of the retroactive nature

of the Amendment, Defendant now moves to reduce his sentence pursuant to 18 U.S.C. § 3582(c)(2) and Part A of Amendment 821. (ECF No. 39). The government does not oppose Defendant's eligibility under Part A of Amendment 821. And the government does not oppose a reduction. (ECF No. 42). Rather, the parties recommend that the Court reduce Defendant's sentence from 37 to 33 months' imprisonment in light of the amendments. (*Id.*).

Yet this Court has final say on any reduction. And, even when considering the amendments, this Court refuses to depart from its prior ruling. For the following reasons, the Court finds that the factors under 18 U.S.C. § 3553(a) do not justify a reduction in sentence. This Court's original sentence will remain intact.

## **DISCUSSION**

### I.     Background

On October 29, 2020, Hatch plead guilty to the sole count of the Grand Jury's indictment charging him with being a Felon in Possession of a Firearm under 18 U.S.C. § 922(g)(1). (ECF Nos. 1, 15, 22). On June 12, 2020, Fort Wayne Police Department ("FWPD") officers were conducting surveillance on Hatch who had been involved in rioting in May 2020.[1] (PSR ¶ 8). The day before, officers had seen Hatch's social media post that showed a hand holding a Ruger pistol and a distinct serial number. At the time, Hatch was on supervised release from a separate conviction under Section 922(g)(1), Northern District of Indiana Case No. 1:16-cr-87. (*Id.* ¶¶ 8, 63).

Officers observed Hatch exit his sister's residence and enter the back seat of a white Kia Optima. (*Id.* ¶ 9). The Kia's driver failed to completely stop at a stop sign and officers activated their emergency lights to initiate a traffic stop. (*Id.*). The Kia initially rolled to a stop but, as an

---

[1] On August 27, 2020, Hatch plead guilty to a rioting charge based on his May 2020 conduct in Allen County Superior Court, Indiana, in Case No. 02D04-2006-CM-1839. (ECF No. 29, ¶ 67).

2

officer exited his vehicle to approach, the Kia suddenly accelerated. (*Id.* ¶ 9). Officers chased the Kia for several blocks before it finally stopped. (*Id.*).

Officers then conducted a felony traffic stop. There were three occupants, with Hatch being in the rear driver's seat. Also, on the floorboard of the driver's side were two fully loaded handguns—one being a Ruger with the same serial number as the gun in Hatch's social media post. (*Id.* ¶ 11). At first, the driver claimed to have a gun permit for the weapons. But an interview of the other occupant revealed that Hatch had passed the Ruger to the driver, who advised that he would claim the gun to prevent Hatch from being charged for the firearm. (*Id.* ¶ 14). After further questioning at the police station, the driver would also admit that the Ruger belonged to Hatch as well. (*Id.* ¶ 15).

Officers interviewed Hatch too. Hatch confirmed that he was on federal supervision for a prior firearms violation. (*Id.* ¶ 16). Although Hatch admitted to participating in the May 2020 riots, he denied possessing the Ruger and continued to claim it belonged to the Kia's driver. (*Id.*). Once shown his social media posts displaying a Ruger bearing the same serial number, Hatch admitted that he possessed the Ruger the day before but continued to deny having the firearm the day of the traffic stop. (*Id.* ¶¶ 16-17). After being faced with contrary evidence, he finally admitted "it's my… gun." (*Id.* ¶ 17).

As stated above, Hatch was on supervised release for a felony firearms conviction when he committed the instant offense.[2] The Court revoked Hatch's term of supervision for the previous offense and sentenced him to 18 months' imprisonment in Case No. 1:16-cr-87. As for the instant

---

[2] Hatch also had a prior felony conviction from August 2015 for Assisting a Criminal in Allen County Superior Court, Fort Wayne, State of Indiana, Case No. 02D04- 1506-F6-000507. (ECF No. 29, ¶ 22). And he had a prior felony conviction for Resisting Law Enforcement from January 2014 in Allen County Superior Court, Fort Wayne, State of Indiana, Case No. 02D05- 1402-FD-000121. (*Id.* ¶ 53).

offense, the Court sentenced him to 37 months' imprisonment to run consecutive to his 18 months' sentence.

In determining the sentence, the Court considered the Defendant's strong support system, his youthfulness, and that he was employed at the time of arrest and has had some periods of gainful employment. In aggravation, the Court emphasized the conduct of his offense, his association with criminally involved peers, and continued criminal activity—including three felony convictions and two misdemeanor convictions as well as repeated violations resulting in multiple revocations. Moreover, Defendant was on supervised release—under the same criminal statute—when he committed the instant federal offense having only been released from imprisonment three months prior.

Since his sentencing on February 10, 2021, Hatch has been involved in several troublesome incidents while imprisoned. On January 27, 2022, he was sanctioned for Possessing a Dangerous Weapon. On November 2, 2022, he was sanctioned for Assault Without Serious Injury. And, most recently, on December 6, 2023, he was again sanctioned for Possession of a Dangerous Weapon.

**II.     Legal Standard**

A motion to modify an otherwise final judgment pursuant to § 3582(c)(2) is a limited and narrow exception to the rule that final judgments are not to be modified. Specifically, § 3582(c)(2) provides:

> [I]n the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission ..., the court may reduce the term of imprisonment, after considering the factors set forth in section 3553(a) to the extent that they are applicable, if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

4

18 U.S.C. § 3582. Thus, under § 3582(c)(2), the Court must undertake a two-step process to determine whether a final sentence should be modified based on a sentencing range that has been lowered by the Sentencing Commission. First, the Court must determine if a retroactive amendment to the Sentencing Guidelines indeed lowered a defendant's guidelines range and whether a reduction is consistent with the applicable policy statements. Second, the Court must consider the § 3553(a) factors to determine if it will exercise its discretion to reduce that defendant's sentence.

The § 3553(a) factors are: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, afford adequate deterrence to criminal conduct, protect the public from further crimes of the defendant, and provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (3) the kinds of sentences available; (4) the applicable sentencing guidelines range; (5) any pertinent policy statement; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense. *See* 18 U.S.C. § 3553(a). The commentary to §1B1.10 requires the court to consider two additional factors: public safety and post-sentencing conduct. USSG §1B1.10 comment (n.1(B)(ii) and (iii)).

**III.    Analysis**

The Defendant's motion invokes Part A of Amendment 821. Part A permits a reduction in status points under certain circumstances. Defendant here received two status points and thus, under the amendments, his criminal history score would be reduced by one point—from 13 to 12—

5

with a corresponding change in his criminal history category from VI to V. As a result, application of the amendment reduces his guideline range from 30-37 months to 27-33 months.

As set out in the Introduction, the parties agree that Defendant is eligible for a reduced sentence. They also jointly recommend that Defendant's sentence be reduced from 37 months to 33 months. Although apparent that the retroactive amendment to the Sentencing Guidelines indeed lowered Defendant's guidelines range, the Court must consider the § 3553(a) factors to determine if it will exercise its discretion to reduce his sentence. Under these circumstances, those factors do not support a reduction. And the Court's original sentence—37 months' imprisonment—remains appropriate.

The Court has considered the §3553 factors along with the Defendant's risk to public safety and his post-sentencing conduct. Defendant may have been charged as merely being a felon in possession, but the circumstances of his offense cut against a reduction. Defendant was on supervised release for just three months before committing the instant offense. And he committed the same crime for which he was previously incarcerated. While on supervised release, he participated in riots and admitted to throwing items into the crowd. With a litany of other prior offenses, Defendant does not appear to have learned his lesson and has demonstrated a continued failure to abide by the law.

Even still, the Court has greater concerns in the realms of public safety and post-sentencing conduct. Defendant's participation in a riot after having just been released is concerning in and of itself. His continued possession of firearms despite felony convictions is equally as concerning especially when considering that Defendant is known to associate with criminally involved peers. In relation to the instant offense, the Kia's driver led officers on a car chase. And Defendant was rather evasive when questioned about the whether he owned the Ruger. Defendant even went so

far as to flaunt his possession of firearms on social media. These actions simply do not demonstrate respect for the law.

While serving his sentence, Defendant engaged in even more troublesome behavior. On January 27, 2022, he was sanctioned for Possessing a Dangerous Weapon. On November 2, 2022, he was sanctioned for Assault Without Serious Injury. And, most recently, on December 6, 2023, he was again sanctioned for Possession of a Dangerous Weapon. Defendant's efforts to obtain dangerous weapons—both in the public as a felon and incarcerated as an inmate—demonstrate that public safety would be best served by denying a reduction. The Court declines to inquire as to what purpose Defendant would be obtaining dangerous weapons, but Defendant was well aware that he cannot possess them in public nor in prison. Nonetheless, those items continue to be found in his possession which endangers those around him. For these reasons, after considering all the relevant §3553 factors and the policy statement, the Court concludes that the Motion for Reduction should be DENIED.

## CONCLUSION

The Defendant's Motion for Reduction (ECF No. 39) is DENIED.

SO ORDERED on March 12, 2024.

s/ *Holly A. Brady*
CHIEF JUDGE HOLLY A. BRADY
UNITED STATES DISTRICT COURT